UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**ORHAN AYGUN,**

    **Plaintiff,**

    v.

**KILOLO KIJAKAZI,** Acting Commissioner of Social Security,

    **Defendant.**

Civ. No. 22-07484 (KM)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    Plaintiff Orhan Aygun brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Title II Disability Insurance Benefits ("DIB"). He argues that the ALJ's determination requires remand because: (1) the ALJ failed to consider the impact of mild mental limitations on the plaintiff's ability to perform his skilled past relevant work; and (2) the ALJ erred in failing to consider the plaintiff's past relevant work as a composite job. For the reasons stated below, the Commissioner's decision is **REVERSED** as to issue no. 2 and **REMANDED** for further proceedings consistent with this Opinion.

**I.    BACKGROUND**[1]

    Aygun applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") on October 25, 2020. He claimed a period of

---

[1]    Citations to the record are abbreviated as follows:

    "DE" = docket entry, citing the pages in the upper right-hand corner of the CM/ECF system;

    "R. _" = Administrative Record (DE 3), citing the pages in the lower-right hand corner of the documents;

    "Pl. Br." = Plaintiff Aygun's moving brief (DE 5);

    "Def. Br." = SSA Commissioner's opposition brief (DE 6);

    "Reply Br." = Aygun's reply brief (DE 8).

disability beginning on March 1, 2020, based on the following physical impairments: 1) diabetes, 2) high cholesterol, 3) high blood pressure, 4) asthma, 5) depression, 6) back pain, and 7) arthritis. (R. 55, 157-165) His application was denied initially on March 17, 2021, and upon reconsideration on May 8, 2021. (R. 76-80, 86-93.) On August 31, 2021, Aygun had a hearing before an Administrative Law Judge ("ALJ"), Dina R. Loewy, to review his application de novo. (R. 33-54.) The ALJ heard testimony from the plaintiff, who was represented by counsel, and from a vocational expert. On November 24, 2021, ALJ Loewy issued a decision finding that Aygun has the residual functional capacity to perform light work activities with additional postural, manipulative, respiratory, and environmental limitations. (R. 7-24.) The Appeals Council denied the plaintiff's request for review on October 25, 2022, rendering the ALJ's decision a final decision of the Commissioner. (R. 1–6.) This appeal followed.

II. **DECISION FOR REVIEW**

   **A. The Five-Step Process and this Court's Standard of Review**

   To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. This requires a claimant to show that he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d), 1382(a).

   Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**RFC and Step 4:** Determine the claimant's "residual functional capacity" ("RFC"), meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on his RFC, the claimant can return to her prior occupation. 20 C.F.R. § 1520(a)(4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

On appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228

F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("[W]e will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

**B. The ALJ's Decision**

ALJ Loewy undertook the necessary step-by-step inquiry.

### Step 1

The ALJ concluded that the plaintiff had not engaged in substantial gainful activity from the alleged onset date of March 1, 2020. (R. 12.)

### Step 2

The ALJ found that through the date last insured, the plaintiff had the following severe impairments: diabetes mellitus, hypertension, asthma, degenerative disc disease, obesity, and osteoarthritis of the left hip and bilateral shoulders. (R. 12 (citing 20 CFR 404.1520(c).) However, the ALJ found that the plaintiff's mental health impairments were non-severe. More specifically, the ALJ considered the medical evidence and administrative record and found that the plaintiff's medically determinable impairment of diabetic neuropathy "does not cause more than minimal limitation in the claimant's ability to perform basic work activities." (R. 12.) The ALJ similarly found that the plaintiff's medically determinable mental impairments of major depressive disorder and generalized anxiety disorder likewise do not cause more than minimal limitation to perform basic mental work activities. (R. 13.) After thorough consideration of the four "paragraph B" criteria, the ALJ found that the plaintiff had only a mild limitation in: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (R. 13-15.)

### Step 3

With respect to the impairments found to be severe, the ALJ determined that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15-16.) The ALJ's discussion of the evidence focused on, *inter alia*, Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), 3.03 (asthma), 4.00(H)(1) and 4.04(C) (hypertension), 14.09 (osteoarthritis). (*Id.*) The ALJ added that she considered the effect of the plaintiff's diabetes mellitus under SSR 14-2 p and Listing 9.00B5. (R. 16.)

### RFC and Step 4

The ALJ defined the plaintiff's RFC as follows:

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk with normal breaks for a total of 6 hours for both in an 8-hour workday; sit with normal breaks for a total of 6 hours in an 8-hour workday; occasionally climbing ramps or stairs; never climbing ladders, ropes or scaffolds, occasionally stooping; never kneeling, crouching or crawling; frequent reaching, handling, or fingering; occasional overhead reaching; avoiding concentrated exposure to humidity, vibrations or pulmonary irritants such as fumes, odors, dusts, gases, or poor ventilation; must avoid all exposure to hazardous machinery or unprotected heights; and no operation of foot controls.

(R. 16.) The ALJ analyzed at length the evidence supporting that RFC determination. (R. 16-19.) Based on the RFC, ALJ Loewy concluded at Step 4 that, "The claimant is capable of performing past relevant work as a mailroom supervisor (DOT # 209.137-010; light as generally performed, medium as actually performed, SVP 6). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)." (R. 19.) As a result, the ALJ concluded that the plaintiff was not disabled under the relevant period. (R. 20.) Therefore, she concluded her analysis at Step 4 and did not move on to Step 5.

### III.   DISCUSSION

The plaintiff challenges the ALJ's findings in two ways. First, he contends that the ALJ failed to separately consider the impact of his non-severe, mild mental limitations, on his ability to perform skilled past relevant work. (Pl. Br. 9-20 (citing 20 C.F.R. § 404.1545(a)(2)).) Second, the plaintiff argues that the ALJ erred in finding that he could perform his past relevant work as a mailroom supervisor as generally performed in the national economy because the ALJ did not consider the role as a composite job. (*Id.* 20-22 (citing Program

6

Operations Manual System ("POMS") DI 25005.020(B).) I address each of these arguments in turn.

### A. Step Four/RFC Appeal

As detailed above, at Step 4, the ALJ determines whether, despite limitations, the claimant retains capacity to perform his past relevant work. 20 C.F.R. § 404.1545(a)(1); *Poulos*, 474 F.3d at 92. An ALJ "must consider all evidence" before her and "must give some indication of the evidence which [she] rejects and [her] reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) and *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Further, if the claimant has more than one impairment, the ALJ must consider all of the claimant's medically determinable impairments—regardless of whether they are severe or non-severe. *D.C. v. Comm'r of Soc. Sec.*, Civ. No. 20-2484, 2021 WL 1851830, at *5 (D.N.J. May 10, 2021) (quoting 20 C.F.R. § 404.1545(a)(2)). But an RFC need reflect only the claimant's "credibly established limitations"; the ALJ is not required to accept all claimed limitations for purposes of assessing the claimant's RFC. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Thus, an ALJ may exclude a deficiency or limitation from the RFC without error if he or she concludes that a claimant's deficiency is "so minimal or negligible that . . . it would not limit her ability" to perform required work tasks. *See Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004). The same reasoning applies to a vocational expert's hypothetical. *Lee v. Comm'r of Soc. Sec.*, 248 F. App'x 458, 462 (3d Cir. 2007) ("There was no need to include a mental impairment in the hypothetical as the determination that her condition was not severe was supported by substantial evidence.").

The plaintiff argues that the ALJ's failure to include any mental functional limitations in the RFC finding and dispositive hypothetical question means that they were not accounted for, and thus, remand is required. (Pl. Br. 12.) I disagree.

I start first with ALJ's Step 2 analysis. To rehash, the ALJ found that the plaintiff's mental impairments of diabetic neuropathy, major depressive disorder (recurrent, mild), and generalized anxiety disorder did not cause more than a minimal limitation in the plaintiff's ability to perform basic mental work activities. (R. 12-15.) The plaintiff's mental impairments were therefore classified as non-severe. (R. 15.) Notably, the plaintiff does not challenge the ALJ's findings of the plaintiff's severe and non-severe impairments.

In reaching this conclusion, the ALJ considered a host of evidence: the plaintiff's pharmacy prescription history records (Exhibit 17E); medical reports and office treatment records from KASHOQA PSYCHIATRICY ASSOCIATES (Exhibits 1F, 5F, 8F, & 10F); and the plaintiff's function report (Exhibit 3E). (R. 12-15.) With respect to the plaintiff's impairment of diabetic neuropathy, the ALJ specifically noted that, "[t]here is no EMG testing to support the diagnosis of diabetic neuropathy and as noted below, the claimant's sensation has routinely been noted to be intact. Further, the claimant has filled his prescription for Gabapentin just one time." (R. 12-13 (citing Exhibit 17E).) As to the plaintiff's mental impairments of depressive disorder and anxiety, the ALJ expressed that "there is no evidence of more than mild mental deficits overall" because the plaintiff's "[m]ental status function is consistently intact despite an anxious and depressed mood." The ALJ then further supported these conclusions with the record evidence:

> In January 2020, an exam revealed no serious mental status abnormalities. (Exhibit 1F at 9). In July and August 2020, he presented with a euthymic mood with no signs of depression or manic process. (Id. at 3, 5) He presented as relaxed, attentive, communicative, and well-groomed and dressed. (*Id.*) Mental status function was intact with logical thinking and intact cognitive functioning. (*Id.*) In September 2020, his cognitive functioning was intact, as were his short and long-term memory and his ability to abstract and do arithmetic calculations. (*Id.* at 1) He was fully oriented with no signs of anxiety or gross behavioral abnormalities. He was cooperative and attentive. (*Id.*)

8

> In February 2021, he was noted to exhibit no serious mental status abnormalities (Exhibit 5F, p.1). He showed no signs of cognitive difficulty with intact memory and normal attention span. (*Id.*) In March 2021, his mental status function remained unremarkable, despite looking glum and unhappy with signs of mild depression (Exhibit 8F, p. 1).
>
> In June 2021, his mood was noted to be euthymic with no signs of depression or manic process. He presented as relaxed, attentive, communicative, well-groomed and dressed. His speech was normal in rate, volume and articulation and his language skills were intact. He denied suicidal or self-injurious ideas or impulses. Assaultive or homicidal ideas or intention were also denied. Hallucinations or delusions were denied and there was no apparent thought disorder. His associations were intact, his thinking was generally logical and his thought content was appropriate. His cognitive functioning based on vocabulary and fund of knowledge was intact and age-appropriate and he was fully oriented. There were no signs of anxiety apparent. He exhibited no signs of attentional or hyperactive difficulties. Insight and social judgment appeared intact (Exhibit 10F, p. 2).
>
> Overall, there is no evidence of more than mild functional deficits caused by anxiety or depression. His mental impairments are therefore non-severe for the purposes of this decision. In addition, in 2020, the claimant has not required more than mild psychotropic medications that were infrequently filled (Exhibit 17E). In 2021, although Seroquel was added to his medication regimen, the record does not contain evidence of psychosis, and it was noted that this medication was prescribed to help with insomnia and ruminations (Exhibit 17E, 5F at 3).

(R. 14.)

     The ALJ then considered the four functional areas and found that the plaintiff has, at most, mild mental limitations in: (1) understanding, remembering, or applying information; (2) interacting with others; (3)

9

concentrating, persisting, or maintaining pace; (4) adapting or managing oneself. (R. 14.) The ALJ provided thoughtful analysis in each of the functional areas and cited to the record evidence. Ultimately, the ALJ concluded that the plaintiff's mental impairments were non-severe because they "cause no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities[.]" (R. 15 (emphasis in original).) These findings are substantiated by the record, and again, the plaintiff does not challenge the ALJ's Step 2 findings.

Moving then to Step 4, I find that the ALJ has not committed clear legal error in formulating the plaintiff's RFC. At the onset, the ALJ noted that she gave "careful consideration of the entire record," including "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (R. 16.)  ALJ Loewy further considered "the medical opinion(s) and prior administrative finding(s)[.]" (R. 16.)

The ALJ recounted, while citing to the record, that the plaintiff "reported poor sleep but no problems with personal care activities," "testified that he is further affected by depression," and "cannot drive more than 15 or 20 minutes at a time, or he loses his way during the drive and does not know where he is or where he is going." (R. 17.) The ALJ then concluded with the following as it relates to the plaintiff's mental health limitations:

> The undersigned has fully considered the medical opinions and prior administrative medical findings (Exhibits 2A, 4A) as follows: DDS consultants limited the claimant to the light range of exertion with additional postural and respiratory/environmental restrictions. They found no severe mental impairment. The undersigned notes that these opinions are consistent with the longitudinal treatment record as a whole and supported by the medical findings cited within. These opinions are therefore generally persuasive. However, giving the claimant the benefit of

10

> the doubt, the undersigned has assigned him a more limiting residual functioning capacity assessment.

(R. 19.) After reviewing all of the above, the ALJ formulated the resulting RFC.

Despite the rather short explanation of any mental limitation in Step 4, Judge Loewy did not commit reversible error in this regard. The record as a whole indicates that Judge Loewy thoroughly examined the plaintiff's mental limitations. In Step 2, the ALJ found that they warrant no more than a mild limitation in the four functional areas. That being the case, the ALJ did not need to provide an in-depth analysis of mental impairments in the RFC assessment. *See, e.g., Holley v. Comm'r Soc. Sec.*, 590 F. App'x 167, 169 (3d Cir. 2014) (holding that when ALJ found that claimant "had—at most—minor mental impairments," ALJ did not err when RFC included no mental limitations); *Gita P. v. Comm'r of Soc. Sec. Admin.*, Civ. No. 21-6087, 2022 WL 1683834, at *6 (D.N.J. May 26, 2022) (same); *D.C.*, 2021 WL 1851830, at *6 (same) (collecting cases). Moreover, "[t]he fact that this explanation appeared in the section on step two, instead of the section on step four, is a matter of form, not substance." *Doss v. Comm'r of Soc. Sec.*, Civ. No. 19-18139, 2020 WL 5036199, at *2 (D.N.J. Aug. 26, 2020). The ALJ's determination is supported by substantial evidence.

I also find the plaintiff's objection to the hypothetical question posed to the vocational expert unavailing, for largely the same reasons. An ALJ is not required to "submit to the vocational expert every impairment *alleged* by a claimant." *Rutherford*, 399 F.3d at 554 (emphasis in original). Instead, the ALJ must submit hypotheticals that "accurately portray" the claimant's impairments. *Id.* Thus, there is "no need to include a mental impairment in the hypothetical" where the ALJ determines that a condition is not severe, and such determination is supported by substantial evidence. *Lee*, 248 F. App'x at 462.

The plaintiff's impairments here, depressive disorder and anxiety, are supported by some medical evidence but controverted by other evidence. I recount some examples from the record. On September 21, 2020, Dr. Fumitaka

11

Hayashi noted during an examination of the plaintiff that, although he appeared flat, glum, and unhappy, he was "attentive, communicative," and exhibited "speech that is normal in rate, volume, and articulation and is coherent and spontaneous." (R. at 288.) Dr. Hayashi further noted that the plaintiff's "[c]ognitive functioning and fund of knowledge are intact and age appropriate. Short- and long-term memory are intact, as is ability to abstract and do arithmetic calculations." (*Id.*)

Similarly, on February 22, 2021, Dr. Hayashi noted that the plaintiff's examination revealed "no serious mental status abnormalities." (R. 500.) At that time, the plaintiff did not "exhibit[] neither depression nor mood elevation," nor did he exhibit "signs of anxiety." (*Id.*) His cognitive functions and memory were also intact. (*Id.*)

Although Dr. Hayashi noted that the plaintiff was again flat, glum, and unhappy during a follow-up visit on March 25, 2021, the doctor noted the plaintiff's cognitive functions, memory, among other things, were intact. (R. 563.) At that time, the plaintiff was also not showing signs of anxiety. (*Id.*)

Dr. Hayashi saw the plaintiff again on June 3, 2021, and found that he showed "no signs of depression or manic process," and no signs of anxiety. (R. 601.) Further, the plaintiff's speech was normal, language skills were intact, he was thinking logically, his thought content was appropriate, his cognitive functioning was intact, and he was full oriented. (*Id.*)

The ALJ was also persuaded by past administrative medical findings that the plaintiff had no severe mental impairments, despite assigning a mild limiting residual functioning capacity to the four broad functioning areas. (R. 19.)

Further, during the August 31, 2021 hearing, the ALJ asked the vocational expert a series of hypotheticals. Most pertinently, however, ALJ Loewy asked:

> I'm going to ask you to assume a hypothetical claimant with the vocational factors that we identified, that can do light work, lifting or carrying twenty pounds

> occasionally, ten pounds frequently, standing and/or walking with normal breaks for a total of six hours for both in an eight-hour workday, sitting with normal breaks for a total of six hours in an eight-hour workday, occasionally climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, occasionally stooping, kneeling, crouching, or crawling, frequently reaching or handling, occasionally reaching overhead, avoiding concentrated exposure to humidity, vibrations, and to pulmonary irritants such as fumes, odors, dust, gases, or poor ventilation, and avoiding all exposure to hazardous machinery and unprotected heights. And for my first hypothetical, could the hypothetical claimant perform his past relevant work as a mailroom supervisor, per the DOT?

(R. 48-49.) The vocational expert replied with "Yes, Your Honor. That's correct." (R. 49.) After further questioning, the ALJ provided the plaintiff's counsel an opportunity to ask the vocational experts any questions. Counsel asked about a further physical limitation imposed in that hypothetical, but nothing more concerning the plaintiff's *mental* limitations. (R. 52 ("If we added to the judge's hypothetical number one that the hypothetical person could only sit and stand at 30-minute intervals maximum each time, what would be your opinion on their ability to do their past work?").) Considering the record as a whole, and counsel's apparent lack of concern with further mental limitations, I find that ALJ Loewy properly exercised her discretion in determining whether to submit the plaintiff's mental limitations to the ALJ, a determination which rests on substantial evidence.

Because there is substantial evidence to support the ALJ's finding that the plaintiff's mental impairments are non-severe, I will not disturb her findings. *Lee*, 248 F. App'x at 462; *D.C.*, 2021 WL 1851830, at *7 (finding that the ALJ's failure to include the claimant's mental limitation in the hypothetical posed to the vocational expert was not deficient). Nor would it be appropriate for this Court to substitute its judgment for that of the fact finder. *Zirnsak v.*

*Colvin*, 777 F.3d 607, 616 (3d Cir. 2014). Thus, the ALJ's findings as to the RFC assessment and Step 4 are **AFFIRMED.**

### B. Past Relevant Work Appeal

I do find error, however, in the determination that the claimant could perform past relevant work, thus averting any Step 5 determination as to whether the claimant could perform other work existing in the national economy.

The issue of past relevant work is governed by S.S.R. 82-62. That Regulation sets forth the evidence that an ALJ should consider in making this determination:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy.

*Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009)

> Evaluating this evidence, the ALJ should determine whether 'the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it' or whether 'the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.' S.S.R. 82–61. In the latter inquiry, the ALJ may rely on job descriptions

14

> found in the *Dictionary of Occupational Titles* ("DOT").
> *Id.* '[I]f the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id.*

*Garibay*, 336 F. App'x at 158.

Not all jobs fit neatly into an assignable job description in the DOT. "So-called 'composite jobs' have significant elements of two or more occupations and, as such, have no counterpart in the DOT." *Levyash v. Colvin*, Civ. No. 16-2189, 2018 WL 1559769, at *11 (D.N.J. Mar. 30, 2018); *see also* POMS DI 25005.020 ("[T]he claimant's [past relevant work] may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant."). "To establish that a claimant maintains the RFC to perform past relevant work in a composite job, the evidence must establish that the claimant can perform *each job* within a composite job, whether as actually performed or as generally performed in the national economy." *Boggs v. Colvin*, Civ. No. 13–0111, 2014 WL 1277882, at *10 (M.D. Pa. Mar. 27, 2014).

The plaintiff contends that the ALJ erred in failing to consider his past relevant work as a composite job. (Pl. Br. at 20-22.) More specifically, the plaintiff contends that he performed tasks in excess of those assigned to him as a mailroom supervisor: namely, fixing printing machines. (*Id.* at 22.) He contends that such a responsibility does not fall within the purview of a mailroom supervisor but is instead represented in the job description for an "office-machine service." (*Id.* (citing DOT #633.281-018).) As such, the plaintiff argues his relevant work was a composite job, and the ALJ mistakenly considered whether he could perform past relevant work as generally performed, when she should have limited her assessment to whether the plaintiff could perform the composite job as it was actually performed. (*Id.*)

15

I agree. The ALJ's decision as to whether the plaintiff is capable of performing past relevant work as a mailroom supervisor is, at best, ambiguous. For example, the boldface heading (R. 19 No. 6) contends that the plaintiff can perform past relevant work as a mailroom supervisor "light as generally performed, medium as actually performed." The analysis that follows, however, refers only to the plaintiff's ability to perform the job as generally performed, not as actually performed. (R. 19-20.)

I also find remand necessary because the ALJ failed to determine whether the plaintiff's past relevant work was a composite job. Plaintiff is the primary source for his previous work responsibilities. The plaintiff represented in his Disability Report, and during the hearing, that he "fixed some of the printing machines." (R. 40, 186.) That description of the plaintiff's past relevant work encompassed at least part of the job description on which the vocational expert relied. (R. 48.) Thus, whether the plaintiff's past relevant work should be considered a composite job is an open question on remand.

The Step 4 determination of past relevant work, of course, is a useful shortcut when the issue is clear. On remand, the ALJ is free to reanalyze the past relevant work, or may find it more expeditious to proceed to the Step 5 analysis. Accordingly, the Court **REMANDS** for further consideration whether Plaintiff retains the capacity to perform: (1) the particular functional demands and job duties peculiar to the plaintiff's job as he *actually* performed it; and (2) the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. *Garibay*, 336 F. App'x at 158. Should that analysis be impractical or inconclusive, the ALJ retains the discretion to opt for a Step 5 analysis.

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Opinion. A separate order will issue.

Dated: October 25, 2023

/s/ Kevin McNulty
_____
**Hon. Kevin McNulty
United States District Judge**